```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
  ASPEN SPECIALITY INSURANCE                           :
  COMPANY,                                             :
                                                       :
                               Plaintiff,              :      20-CV-4308 (VSB)
                                                       :
                 -against-                             :      OPINION & ORDER
                                                       :
  RCI HOSPITALITY HODLINGS, INC. and                   :
  THE END ZONE, INC.,                                  :
                                                       :
                               Defendants.             :
                                                       :
-------------------------------------------------------X
```

Appearances:

Aaron Frederick Fishbein
Rubin, Fiorella, Friedman & Mercante, LLP
New York, New York

Scott Adam Rader
Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.
New York, New York
*Counsel for Plaintiff*

Deborah Beth Koplovitz
Herrick, Feinstein LLP
New York, New York

Dennis Joseph Artese, Jr
Anderson Kill P.C.
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Before me is Defendants' motion to dismiss this action for lack of personal jurisdiction and venue or, in the alternative, to transfer this action to the Southern District of Texas, as well as Plaintiff's cross-motion to transfer this action to the Eastern District of Pennsylvania should I

find personal jurisdiction to be lacking in this district. Because I find that personal jurisdiction is lacking over Defendants in this district, Defendants' motion to dismiss is GRANTED. Because I find that this action could have been initiated in the Eastern District of Pennsylvania and that the balance of factors weighs in favor of transferring this action to the Eastern District of Pennsylvania, Plaintiff's motion to transfer is GRANTED.

I.  **Background**[1]

Plaintiff Aspen Specialty Insurance Company ("Aspen") is a North Dakota corporation with principal place of business in Rocky Hill, Connecticut. (Compl. ¶ 10.)[2] Defendant RCI Hospitality Holdings, Inc. ("RCI") is a Texas corporation with its principal place of business in Houston, Texas. (*Id.* ¶ 11.) Defendant The Endzone, Inc. ("End Zone," and together with RCI, "Defendants"), a subsidiary of RCI, is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. (*Id.* ¶ 12.) End Zone operates a strip club in Philadelphia. (*Id.* ¶ 13.)

Around October 2013, Aspen issued a commercial general liability policy to RCI that covered a number of RCI subsidiaries, including End Zone and at least two other RCI subsidiaries that operate strip clubs in New York City (the "Policy"). (*Id.* ¶ 14–15.) Aspen issued the Policy using a Madison Avenue address in New York City, (Radar Decl. Ex. A at 2),[3] and under the Policy, the insured is to provide notice to Aspen "[a]s soon as [it becomes] aware of an event that will give rise to a claim" against the insured, which the insured may do by,

---

[1] This section sets forth the relevant, well-pleaded factual allegations from Plaintiff's pleadings. I assume those allegations to be true solely for the purposes of rendering my decision. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). I make no finding as to their veracity.

[2] "Compl." refers to the Complaint filed in this action. (Doc. 1.)

[3] "Radar Decl." refers to the Declaration of Scott A. Radar in Opposition to Defendants' Motion to Dismiss or to Transfer Venue and in Support of Plaintiff's Cross-Motion, in the Alternative, to Transfer Venue, (Doc. 22), and the exhibits thereto.

among other ways, mailing notice to the "Claims Department" at that same Madison Avenue address, (*id.* at 91). The policy names RCI as the insured, (*id.* at 2), and a rider to the Policy states that End Zone is an "additional named insured," (*id.* at 34 (capitalization removed)).

On August 10, 2014, End Zone was the site of a bar fight, which led to a lawsuit in the Pennsylvania Court of Common Pleas against RCI and End Zone in 2016 (the "First PA Suit"). (Compl. ¶¶ 23–24.) During the First PA Suit, Defendants claimed that one of the plaintiffs in that action had previously settled her claims against them. (*See id.* ¶ 25.) On May 26, 2017, a plaintiff from the First PA Suit filed another action against Defendants in state court in Pennsylvania, this time claiming that Defendants' argument from the First PA Suit was premised on a forged signature (the "Second PA Suit," and together with the First PA Suit, the "Lawsuits"). (*Id.* ¶ 26.) Defendants provided Aspen with notice of the Lawsuits for the first time on January 29, 2019. (*Id.* ¶ 29–30.) On May 15, 2019, a plaintiff in the Lawsuits won a jury verdict against End Zone, and the plaintiff's damages ultimately totaled around $1.4 million. (*Id.* ¶ 32–33.)

## II.   **Relevant Procedural History**

Aspen filed this action on June 5, 2020. (Doc. 1, "Action".) Defendants moved to dismiss or, in the alternative, to transfer venue, on July 31, 2020. (Doc. 14.) On August 31, 2020, Aspen filed a brief opposing the motion to dismiss and a cross motion to transfer venue should the motion to dismiss be granted. (Doc. 20.) The motions became fully briefed on September 18, 2020, when Aspen filed a reply brief. (Doc. 25.)

On June 2, 2023, Defendants filed a letter withdrawing their request to transfer the Action to the Southern District of Texas, continuing to assert that the case should be dismissed for lack of personal jurisdiction, but conceding that "if the Court decides the case should be

transferred instead, Defendants now agree with Aspen that the appropriate forum should be the E.D. Pa., in light of the entry and finalization of a judgment against End Zone Inc. by one of the underlying plaintiffs in Pennsylvania." (Doc. 38.)

### III. Legal Standards

#### A. *Rule 12(b)(2)*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 424 (2007). However, a court may "turn[] directly to personal jurisdiction" to dismiss an action where it faces "a straightforward personal jurisdiction issue." *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 124 (S.D.N.Y. 2021) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)). Moreover, "[a]lthough [courts] traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues" on the merits. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (internal citation omitted).

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Prior to an evidentiary hearing, a plaintiff need only make a prima facie

4

showing that jurisdiction exists. *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 732 F.3d 161, 167 (2d Cir. 2013))). This showing may be made through materials outside the pleadings. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

If the court considers pleadings and affidavits submitted by the parties, the plaintiff's "prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Plaintiff's averments "must be taken as true to the extent they are uncontroverted by the defendant's" submissions. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (citation omitted).

### B. *Transfer of Venue*

The Court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 409 (S.D.N.Y. 2017) (quoting *Volk Corp. v. Art–Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977)). "For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The party seeking transfer bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). In deciding whether this standard has been met, courts in the Second Circuit consider all materials they find compelling and do not restrict their evaluations only to materials that would satisfy the admissibility requirements of the Federal Rules of Evidence. *See, e.g.*, *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617–18 (S.D.N.Y. 2016) (looking to representations made in attorneys' letters as to location of witnesses); *Kaufman v. Salesforce.com, Inc.*, No. 20 Civ. 6879 (JPC) (SN), 2021 WL 2269552, at *5 (S.D.N.Y. June 3, 2021) (rejecting argument that a transfer analysis should not credit assertions made in a memorandum of law); *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, 21 Civ. 87 (KPF), 2021 WL 2688722, at *4 (S.D.N.Y. June 30, 2021) (crediting attorney declarations and memoranda of law in granting motion to transfer).

      To determine whether transfer is warranted, a district court engages in a two-step inquiry. *Enigma*, 260 F. Supp. 3d at 407. "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate . . . several factors relating to the convenience of transfer and the interests of justice." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). These factors include:

>    (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Ahrens v. CTI Biopharma Corp.*, 16 Civ. 1044 (PAE), 2016 WL 2932170, at *2 (S.D.N.Y. May 19, 2016) (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *4 (S.D.N.Y. Oct. 28, 2011)).

### IV. Discussion

#### A. *Personal Jurisdiction Over Defendants*

Aspen argues that RCI is subject to general jurisdiction in New York because it "owns and operates at least three strip clubs" that are incorporated in New York. (*See* MTD Opp. 17; *see also* Sherman Decl. ¶ 7–8, Exs. 1–3[4] (showing that the subsidiaries in question are incorporated in New York).)[5] Aspen then asserts that "general personal jurisdiction also exists over End Zone" because it, like RCI's subsidiaries that operate strip clubs in New York, is a "mere department" of RCI. (MTD Opp. 16.)

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. For a corporation, general personal jurisdiction is typically available only in the forum in which it is incorporated and/or the forum in which its principal place of business is located. *See Gucci America, Inc. v. Li*, 768 F.3d 122,

---

[4] "MTD Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Transfer Venue, and In Support of Plaintiff's Cross-Motion, in the Alternative, to Transfer Venue to the Eastern District of Pennsylvania. (Doc. 21.) "Sherman Decl." refers to the Declaration of Scott J. Sherman in Support of Defendants' Motion to Dismiss the Complaint or, in the Alternative, to Transfer this Action, (Doc. 16), and the exhibits thereto.

[5] Aspen raises no argument that principles of specific jurisdiction would render Defendants subject to personal jurisdiction in New York.

7

135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n.19). The fact that a corporation does business in a state, even "substantial, continuous, and systematic" business, is not necessarily enough to subject the corporation to general jurisdiction in the state. *See Daimler*, 571 U.S. at 137–38. Rather, the corporation's affiliations with the forum must be "so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 139 (internal quotation marks and alterations omitted). Only in an "exceptional case" does a corporation have "operations in a forum other than its formal place of incorporation or principal place of business" that are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business[.]"). "The Second Circuit has recognized that the Supreme Court's decision in *Daimler* casts doubt on previous Supreme Court and New York Court of Appeals cases in which courts had exercised general jurisdiction over foreign corporations on the basis of the corporation doing business through a local branch office in the forum." *Pfaff v. Deutsche Bank AG*, No. 20 MISC. 25 (KPF), 2020 WL 3994824, at *5 (S.D.N.Y. July 15, 2020) (citing *Gucci*, 768 F.3d at 135). Since *Daimler* and *Gucci*, numerous cases have rejected the argument that a defendant's "doing business" in a forum is alone sufficient to establish general jurisdiction. *See, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Daimler*, 571 U.S. at 139 n.19) (finding the district court could not properly exercise general jurisdiction over defendants because "[t]he defendants' activities in this case, as with those of the defendants in *Daimler* and *Gucci*, 'plainly do not approach' the required level of contact to qualify as 'exceptional.'"); *Pfaff*, 2020 WL 3994824, at *5 ("[W]hile Moving Respondents

8

concededly have offices and employees in New York, that alone cannot subject them to general jurisdiction.); *Wilder v. News Corp.*, No. 11 CIV. 4947 PGG, 2015 WL 5853763, at *10 n.5 (S.D.N.Y. Oct. 7, 2015) ("After *Daimler*, [] a finding that a limited part of a foreign subsidiary's general business had been conducted in the forum state would be insufficient to justify the exercise of general personal jurisdiction over that entity.") (internal quotation marks omitted).

"[A] parent company's control over a subsidiary is generally not enough to subject the subsidiary to suit in New York courts," nor is the parent's control of the subsidiary usually enough to subject the parent to jurisdiction in New York; such "jurisdiction is only proper 'when the activities of the parent show a disregard for the separate corporate existence of the subsidiary.'" *See Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 n.1 (2d Cir. 2014) (quoting *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)). Courts routinely reject the argument that "common and overlapping" directors or officers between a parent and subsidiary amount to "disregard for the separate corporate existence of the subsidiary." *See Wilder*, 2015 WL 5853763, at *8–9; *Irwin v. ZDF Enterprises GmbH*, No. 04 CIV. 8027 (RWS), 2006 WL 374960, at *9 (S.D.N.Y. Feb. 16, 2006) ("While Plaintiffs refer to the fact that UKTV shares one board member with the BBC and one board member with Telewest, *Jazini* expressly held such evidence inadequate to demonstrate that a subsidiary acts as a 'mere department' of a parent." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))). *See also Derthick v. Bassett-Walker Inc.*, No. 90 CIV. 3845 (JMC), 1992 WL 249951, at *3 (S.D.N.Y. Sept. 23, 1992) ("[P]laintiffs must show that the 'parent officers extend their control beyond that normally exercised by boards of directors.'" (quoting *Beech Aircraft*, 751 F.2d at 121)).

Here, Aspen has failed to offer facts that tend to show that RCI has "extend[ed] [its]

9

control" over its New York subsidiaries in a manner "beyond that normally exercised by boards of directors." *See Beach Aircraft*, 751 F.2d at 121.  Among other things, Aspen would at minimum have to show that RCI sufficiently "interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities." *Id*.  However, all Aspen offers on this front is that RCI's CEO serves as an officer of some of RCI's New York subsidiaries.  (MTD Opp. 14–15).  This is not enough, as the relevant considerations include matters such as "whether the parent pays the executives' salaries, and whether the subsidiary holds separate meetings of its Board of Directors." *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 54 (S.D.N.Y. 1999) (citing *Beech Aircraft,* 751 F.2d at 121–22).  Indeed,

> "[t]he officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."  Moreover, "the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder."  It is only when "the parent officers extend their control beyond that normally exercised by boards of directors [that] their behavior supports an inference that the subsidiary is not an independent entity."

*Wilder*, 2015 WL 5853763, at *9 (quoting *Beech Aircraft,* 751 F.2d at 120–21).  Aspen's allegation of a single overlapping officer does not suggest that RCI disregards its subsidiaries separate corporate existences.  Aspen does "not allege here that [RCI] assigns and transfers [its subsidiaries'] officers and managers at will; that it appoints substantially all of [its subsidiaries'] officers and managers; that it determines the duties and responsibilities of [its subsidiaries'] officers and managers; or that it pays [its subsidiaries'] executives' salaries." *Id.* at *10.  In other words, there is an absence of the type of domination necessary for veil-piercing. *See, id.* at *6 ("The standard for veil-piercing in the personal jurisdiction context is a demanding one[.]")  "The circumstances described" by Aspen "are wholly inadequate to establish the 'pervasive control' required

by the 'mere department' standard" for jurisdictional veil-piercing it seeks to apply. *NovelAire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472(CM), 2013 WL 6182938, at *8 (S.D.N.Y. Nov. 21, 2013).[6]

Aspen's request for jurisdictional discovery is denied as it has failed to establish entitlement to such discovery. "A district court may deny jurisdictional discovery where a plaintiff fails to establish a prima facie case for jurisdiction." *Herlihy v. Sandals Resorts Int'l, Ltd.*, 795 F. App'x 27, 30 (2d Cir. 2019) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)). Here, I find that Aspen has not made a colorable enough showing that RCI has so disregarded the separate corporate form of its New York subsidiaries as to warrant further jurisdictional discovery on the matter.

### B. *Motion to Transfer Venue*

Because personal jurisdiction over Defendants is not proper, I turn to the parties' transfer of venue motions.[7] Defendants originally asked to transfer this case to the Southern District of Texas "[i]n the event this Court does not dismiss this case due to lack of personal jurisdiction," (MTD Br. 27),[8] whereas Aspen requests that, if I find dismissal for lack of personal jurisdiction is warranted, I transfer this action to the Eastern District of Pennsylvania, (MTD. Opp. 21). Defendants now agree with Aspen that, if I do not dismiss Plaintiff's claims for lack of personal

---

[6] "The Second Circuit Court of Appeals has not endorsed the 'mere department' theory" articulated in the *Beech Aircraft* case, which was decided in 1984, "or any theory based on a local subsidiary presence–after *Daimler*." *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 344 (S.D.N.Y. 2018) (collecting cases). I need not resolve what if any viability the mere department theory still has in this Circuit because, consistent with my analysis in this section, I find that Aspen has failed to show that RCI has a "disregard for the separate corporate existence" of any of its relevant New York subsidiaries, which would preclude application of the "mere department" theory even if it were still good law. *See Universal Trading*, 560 F. App'x at 55 n.1.

[7] As noted, "[t]o address a venue challenge does not require a preliminary finding that 'the transferring court has personal jurisdiction over the defendants.'" *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962)).

[8] "MTD Br." refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint or, in the Alternative, to Transfer this Action. (Doc. 15.)

11

jurisdiction, the appropriate forum would be the Eastern District of Pennsylvania, in light of the entry and finalization of a judgment against End Zone Inc. by one of the underlying plaintiffs in Pennsylvania.  (Doc. 38.)

To transfer an action, it must be the case that the action "could have been brought" in the transferee forum, including because personal jurisdiction could be secured over all defendants. *See Animation Station, Ltd. v. Chicago Bulls, LP*, 992 F. Supp. 382, 384 (S.D.N.Y. 1998). Initially, Defendants opposed transfer to the Eastern District of Pennsylvania, arguing that the Underlying Pennsylvania Actions[9] were only "tangentially related to this dispute."  (Doc. 23 at 8.)  However, by Defendants' own admission, "there should be no dispute that this action could have been brought in either Texas or Pennsylvania, the residences of RCI and End Zone, respectively."  (MTD. Br. 16 n.4.)  Therefore, the parties agree that the first prong of the two-part test is satisfied.  I now turn to the nine factors outlined in *Ahrens v. CTI Biopharma Corp.* to determine if transfer to the Eastern District of Pennsylvania is appropriate.  2016 WL 2932170, at *2 (S.D.N.Y. May 19, 2016).  The balance of these factors weighs in favor of transferring this action to the Eastern District of Pennsylvania, given that the underlying conduct took place in Philadelphia, there are numerous cases arising under the facts at issue in this Action proceeding in the Eastern District of Pennsylvania, and Defendants have recently conceded that venue would be appropriate in the Eastern District of Pennsylvania.  (*See* Doc. 38.)  Defendants filed an action against Aspen and another defendant in the Eastern District of Pennsylvania arising out of the same events presented in the case before me.  (*Id.*)  According to Defendants, the action in the Eastern District of Pennsylvania is "more comprehensive" "because it asserts a claim, in the

---

[9] "Underlying Pennsylvania Actions" refers to *D'Anna Brown, Cameron Dean v. The End Zone, Inc. et al*, Pennsylvania Court of Common Pleas, Philadelphia County, No. 160801029 and *D'Anna Brown v. The End Zone, Inc. et al*, Pennsylvania Court of Common Pleas, Philadelphia County, No. 170504021.  (*See* Compl. ¶¶ 24–26.)

alternative, against an additional party[.]" (*Id.*) Accordingly, Defendants withdrew their request to transfer this action to the Southern District of Texas. (*Id.*) Therefore, the interests of justice would be served by transferring this case to the Eastern District of Pennsylvania. *See Ahrens,* 2016 WL 2932170 at *2.

Based on the underlying facts of this case and Defendants' recent concession that venue is appropriate in the Eastern District of Pennsylvania, I find that transfer is warranted.

## V.     Conclusion

Defendants' motion to dismiss on the grounds of lack of personal jurisdiction is GRANTED; however, in the interest of justice, Plaintiff's motion to transfer this action to the Eastern District of Pennsylvania is GRANTED.

The Clerk of Court is respectfully directed to close all open motions on the docket, terminate this action, and transfer the case forthwith to the Eastern District of Pennsylvania. The seven-day waiting period set forth in Local Rule 83.1 is hereby waived so that the case may be transferred without delay.

SO ORDERED.

Dated: June 20, 2023
       New York, New York

*[signature: Vernon Broderick]*

Vernon S. Broderick
United States District Judge